**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHRISTOPHER KULB** | : | |
| | : | **CIVIL ACTION** |
| v. | : | No. 24-1390 |
| | : | |
| **CHEX SYSTEMS, INC.** | : | |

**McHUGH, J.**                                                                                                            **January 29, 2026**

### MEMORANDUM

  Parties rely on information exchanged in discovery in determining the merits of a dispute. Sometimes the information exchanged is inaccurate and later corrected. The question then becomes whether the original answer, whether by deposition or interrogatory, continues to be relevant as evidence. Here, that question has emerged because the Court denied a motion for summary judgment based upon Defendant's answer to an interrogatory response addressing a central issue in this case, an answer emphasized by counsel for Plaintiff in opposing the motion. Defendant Chex Systems, Inc. now moves for reconsideration, asserting that Plaintiff misled the Court by failing to disclose that ChexSystems had corrected its answer in a supplemental interrogatory response.

  I find that reconsideration is warranted because the validity of the Court's analysis of the merits was undermined by a mistake of fact created by a lack of complete candor on the part of Plaintiff's counsel. Next, for the reasons discussed below, I am persuaded that, on the facts here, the supplemental interrogatory response should be considered the operative version, with the original response superseded. On this corrected record, ChexSystems is entitled to summary judgment on Mr. Kulb's Section 1681e(b) Fair Credit Reporting Act (FCRA) claim because no reasonable jury could find that ChexSystems reported Mr. Kulb as deceased to a third party. But

this correction to the record does not impact my analysis of Mr. Kulb's Section 1681i FCRA claim, and Defendant's renewed motion as to this claim will be denied.

I.   **Relevant Background**

The factual allegations in this case are set forth in more detail in my prior memorandum denying ChexSystems's Motion for Summary Judgment. *See Kulb v. Chex Sys., Inc.*, No. 24-1390, 2025 WL 1071423 (E.D. Pa. Apr. 8, 2025). I summarize only those facts relevant to the present motion for reconsideration.

In the summer of 2020, Mr. Kulb applied three times for an Apple credit card offered through Goldman Sachs Bank USA. ECF 21-2, 21-3, 21-4. Each application was denied because Goldman Sachs was "unable to verify [Kulb's] identification information." *Id*. Upon learning that Goldman Sachs uses ChexSystems to verify consumer information when reviewing credit applications, Mr. Kulb requested a copy of his consumer file from ChexSystems. Kulb Dep. 85:13-86:22, ECF 19-3; Cables Decl. ¶ 15, ECF 21-6.

On January 19, 2021, Chex Systems sent Mr. Kulb his consumer score disclosure report. *See* ECF 27-3 ("January Consumer Disclosure").[1] The January Consumer Disclosure listed Mr. Kulb as deceased, and in March 2021, he lodged a dispute with Chex Systems. January Consumer Disclosure; Cables Decl. ¶ 18. Mr. Kulb subsequently brought suit, asserting that ChexSystems's procedures to ensure accuracy and its post-dispute reinvestigation were insufficient under the FCRA.

---

[1] Mr. Kulb requested his consumer score disclosure report multiple times within a few days. *See* ECF 21-7. It appears he received multiple reports from Chex Systems. *Compare* ECF 27-3 (consumer disclosure report dated January 19, 2021), *with* ECF 21-5 (consumer disclosure report dated January 17, 2021). Because these reports are essentially identical, I will cite to ECF 27-3 throughout because it is the most legible version.

On September 20, 2024, ChexSystems responded to Mr. Kulb's first set of interrogatories. Original Response, ECF 27-2.  The Original Response represented that Chex Systems had reported Mr. Kulb as deceased to Goldman Sachs, and was verified by Sarah Cables, a ChexSystems Business Systems Analyst.  *Id.* at 9.  ChexSystems also stated "that the deceased notation [on Mr. Kulb's consumer file] was added between April 18, 2020, and January 17, 2021, and was removed by April 16, 2021."  *Id.* at 5.

The discovery period ended on November 12, 2024.  ECF 12.  On December 13, 2024, ChexSystems sent a letter to Plaintiff's counsel, clarifying that discovery records proved "ChexSystems did not report to a third party a deceased notation affiliated with Plaintiff" and requesting that Mr. Kulb withdraw the case.  ECF 30-3.

Mr. Kulb did not withdraw.  In January 2025, ChexSystems formally amended its interrogatory responses pursuant to Federal Rule of Civil Procedure 26(e).  *See* Supplemental Response, ECF 30-2.  In the Supplemental Response, ChexSystems stated that it had never reported Mr. Kulb as deceased to a third party, and that the deceased notation in his January Consumer Disclosure was due to the social security number submitted by Mr. Kulb being one digit different from his actual social security number.  *Id*. at 5, 11-12.  Ms. Cables verified this response as well.

The following month, ChexSystems moved for summary judgment.  ECF 19.  I denied this motion, finding there to be a genuine issue of material fact as to both of Mr. Kulb's claims, relying in part on the Original Response.  ECF 29.  ChexSystems argues that Plaintiff's failure to disclose

3

the Supplemental Response caused the Court to commit a clear error of fact that undermines the validity of its legal analysis.[2]

## II. Standard of Review

The Third Circuit has stated that "[t]he scope of a motion for reconsideration . . . is extremely limited," *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011), and its purpose "is to correct manifest errors of law or fact or to present newly discovered evidence," *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). To prevail on a motion for reconsideration, the moving party must demonstrate: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court" entered its prior ruling; "or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citation omitted).

## III. Discussion

### A. Section 1681e(b)

In his Complaint, Mr. Kulb asserts that ChexSystems violated Section 1681e(b) of the FCRA by negligently and willfully failing to follow reasonable procedures to ensure that information it reported to third parties was accurate. Am. Compl. ¶ 16, ECF 17; 15 U.S.C. § 1681e(b).

---

[2] The Court published its order and memorandum without significant delay after receiving Plaintiff's Response in Opposition, consistent with the practices outlined in my Guidelines for Counsel. *See* Judge Gerald Austin McHugh Guidelines for Counsel at 3 ("[O]nce an initial opposition brief has been filed, the Court will begin considering the merits of the issue."). ChexSystems may have planned to raise the issues raised here in a reply brief, but I can discern no reason why it did not disclose its amendment to the interrogatory in its response to the Motion for Summary Judgment. I will not foreclose relief on that basis, but the need for reconsideration is to a meaningful degree also attributable to Defendant's inexplicable delay.

To state a claim under Section 1681e(b), a plaintiff must establish, among other elements, that "inaccurate information was included in a consumer's credit report." *Bibbs v. Trans Union LLC*, 43 F.4th 331, 342 (3d Cir. 2022) (citing *Cortez v. Trans Union*, *LLC*, 617 F.3d 688, 708 (3d Cir. 2010)). Based on the record before the Court, I previously concluded that there was a material factual dispute as to this element. ChexSystems's response to interrogatory number nine stated that it had reported Mr. Kulb as deceased to Goldman Sachs Bank USA, ECF 27-2, whereas the Cables Declaration represented that ChexSystems never reported that Mr. Kulb was deceased to a third party, Cables Decl. ¶ 14. That contradiction was for a jury to resolve.

But as noted above, ChexSystems brings forth new evidence. Unbeknownst to the Court, on January 10, 2025, ChexSystems supplemented its interrogatory responses in accordance with Federal Rule of Civil Procedure 26(e), clarifying that it had *never* reported Mr. Kulb as deceased in a consumer report. The Court was unaware of this correction because Plaintiff failed to cite the Supplemental Response, instead only referring to the Original Response.[3] Reconsideration is therefore warranted because if the Supplemental Response is valid, there is no material issue of fact in dispute.

To determine whether ChexSystems's Motion for Summary Judgment should now be granted, I must first determine whether the Supplemental Response is proper evidence and, if so, whether the Original Response remains relevant or should be stricken from the record.[4]

---

[3] Plaintiff's counsel *did not* disclose the fact that ChexSystems had supplemented its interrogatory response. In his response to ChexSystems's Motion for Summary Judgment, Mr. Kulb stated "Defendant later sought to walk back its under-oath testimony." Pl. Resp. at 4, ECF 27. But without being informed that ChexSystems had formally supplemented its interrogatory response, the Court took this as mere argument.

[4] As statements of the opposing party, the answers to interrogatories are typically admissible at trial. *See* Fed. R. Evid. 801(d)(2) (admission by party-opponent).

### 1. *The Supplemental Response is properly considered.*

Under Federal Rule of Civil Procedure 26(e), a party "*must* supplement or correct" its prior discovery responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1) (emphasis added). Rule 26(e) thus imposes an affirmative duty on litigants. If a party fails to provide corrected or supplemented information, under Rule 37(c)(1) "the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

A party need not formally supplement their interrogatory response to comply with Rule 26(e), so long as the information has "otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Rule 26(e)'s requirements are met "where disclosure of the information in question is clear and unambiguous," even if it does not take the form of a formal supplemented interrogatory. *Fiumano v. Metro Diner Mgmt. LLC*, No. 17-465, 2022 WL 2541354, at *5 (E.D. Pa. July 7, 2022) (Brody, J.) (citing *Zoltek Corp. v. United States*, 71 Fed. Cl. 160, 167 (Ct. Cl. 2006)). However, disclosures that "are not facially apparent and require the drawing of further 'inferences' are insufficient to meet the requirements of Rule 26." *Id.* (citing *Eli Lilly & Co. v. Actavis Elizabeth LLC*, No. 07-3770, 2010 WL 1849913, at *4 (D.N.J. May 7, 2010)); *see also* 6 *Moore's Federal Practice* § 26.131[1] (3d ed. 2024) (stating that a Rule 26(e) disclosure "must be in such a form and of such specificity as to be the functional equivalent of a supplemental discovery response.").

I conclude that Defendant ChexSystems complied with Rule 26(e), and its Supplemental Response is therefore proper record evidence. Both ChexSystems's December 13, 2024 letter to Plaintiff and the Supplemental Response sent on January 10, 2025, clearly and unambiguously

6

communicate ChexSystems's amended factual assertion that the "deceased" notation was never included in a consumer report sent to a third party.  ECF 30-3; Supplemental Response at 5, 11-12.  Ideally, ChexSystems should have notified Mr. Kulb as soon as it discovered and turned over the evidence underlying this correction.[5]  Nonetheless, it provided the corrective communications months before dispositive motions were due.  There is no evidence of bad faith or willful delay.  Mr. Kulb is not unduly prejudiced and should not have been surprised by the correction because it occurred in a relatively timely manner and was consistent with all evidence produced during discovery.  Thus, consideration of the Supplemental Response is proper.

Having determined that ChexSystems's Supplemental Response is admissible as a proper Rule 26(e) correction, I must now determine whether the Original Response separately retains evidentiary significance or should be stricken from the record.

> 2. *Because the Original Response is demonstrably incorrect, it lacks evidentiary value and will be stricken from the record.*

Though Rule 26(e) mandates that parties correct and supplement interrogatories, it does not address whether an original response should be maintained as part of the record or stricken.  This is a nuanced and unsettled area of law, despite the parties' assertions to the contrary.  Most precedent involving Rule 26(e) corrections arise from motions to compel discovery and motions to strike new evidence, and there is a dearth of precedent as to when it is appropriate to remove original interrogatory responses from the record.

---

[5] During discovery, ChexSystems discovered and turned over a spreadsheet summarizing each inquiry into Mr. Kulb's consumer report or file.  *See* ECF 21-7.  This record provides strong evidence that ChexSystems never listed Mr. Kulb as deceased in a credit report.  However, because the critical information was buried in a spreadsheet featuring numerous undefined abbreviations and codes, its significance was hardly clear, and production of that spreadsheet did not relieve ChexSystems of its Rule 26(e) duty to amend its prior answer.

The cases the parties cite fail to provide guidance on this issue. For its part, ChexSystems argues that its "supplemental responses became the **only operative** responses," but the cases it cites provide little support for such a broad proposition. *See* Def. Reply at 5-6, ECF 35. In one case, a judge noted that "supplemental responses supersede original responses," but proffered this statement in the context of a motion for sanctions, without determining whether the original responses had continued relevance. *Clements v. T-Mobile USA, Inc*, No. 22-7512, 2024 WL 923781, at *3 (N.D. Cal. Mar. 4, 2024). The other two cited cases involved motions to compel discovery responses and did not examine whether the original responses remained part of the record to be considered as evidence in dispositive motions or during trial. *See Ambriz v. Kernan*, No. 05-1298, 2007 WL 4171212, at *2 (E.D. Ca. Nov. 19, 2007); *Liberty Mut. Ins. Co. v. Guereschi*, No. 17-1152, 2023 WL 2943862, at *3 (W.D.N.Y. Apr. 14, 2023).

The cases Mr. Kulb cites in arguing that the Original Response remains relevant are likewise far removed from the issue presented here. *See Thompson v. Bruister & Assocs.*, No. 3:07-00412, 2013 WL 1092218, at *5-6 (M.D. Tenn. Mar. 15, 2013) (a contradictory supplemental interrogatory response served the same day the party responded to a motion for summary judgment was stricken as a blatantly "sham" attempt to create a factual dispute); *Airlines Reporting Corp. v. Belfon*, No. 2003/146, 2010 WL 3664065, at *24 (D.V.I. Sept. 16, 2010) (discussing contradictions within a single deposition or over the course of depositions taken in close temporal proximity); *Staten Island Supply Co. v. Lumbermens Mut. Cas. Co.*, No. 02-6390, 2005 WL 711678, at *5 (E.D.N.Y. Mar. 29, 2005) (holding that inconsistencies between a signed interview statement and an examination under oath present a credibility issue for the jury).

There is a more robust body of case law in a related area – the correction of deposition testimony. Under Federal Rule of Civil Procedure 30(e), deponents are permitted (though not

required) to review their deposition testimony and submit corrections. Fed. R. Civ. P. 30(e)(1)(B). In the Third Circuit, determining whether to allow *substantive* corrections to depositions is a "fact-sensitive" inquiry, inappropriate for a "one-size-fits-all rule." *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 270 (3d Cir. 2010). District "courts may, in their discretion, choose to allow contradictory changes (and implement [certain] remedial measures . . .) as the circumstances may warrant." *Id.* at 268. Remedial measures include ensuring "that the earlier testimony is not expunged from the record, thus subjecting the deponent to cross-examination and impeachment at trial with respect to the contradictory testimony" and permitting "the deposing party to reopen the deposition." *Id.* at 267. The Circuit has characterized this as a "flexible approach" allowing the change when "independent evidence in the record" provides support for an alteration. *Id.* at 267, 269 (citations omitted). The Court of Appeals also endorsed such an approach to changes in affidavits. *Id.* at 270.

District courts in this circuit allowing substantive deposition corrections typically keep the original testimony on the record. Any discrepancies between the original and modified depositions thereby become an issue of credibility for a jury. *See Aetna Inc. v. Express Scripts, Inc.*, 261 F.R.D. 72, 75 (E.D. Pa. 2009) ("[A]ll of the deponent's answers, including old and new, remain a part of the record, and Defendants are free to cross-examine the witness at trial on his contradictory answers."); *In re Injectafer Prods. Liab. Litig.*, No. 19-276, 2022 WL 4280491, at *2 (E.D. Pa. Sept. 15, 2022) ("the original testimony is not expunged from the record"); *Frungillo v. Bradford Reg'l Airport Operating*, No. 16-108, 2020 WL 978827, at *3 n.4 (W.D. Pa. Feb. 28, 2020) ("the Court will not disregard his original [deposition] testimony for purposes of resolving the instant Rule 56 motion"); *Veolia Water Sols. & Techs. N. Am., Inc. v. Aquatech Int'l Corp.*, 123 F. Supp. 3d 695, 704 (W.D. Pa. 2015) (denying summary judgment because "earlier [deposition] testimony

9

. . . is not expunged from the record" and the altered testimony creates credibility issues for the jury).

As in the deposition context, I am persuaded that how to treat corrected interrogatory answers for evidentiary purposes must also be a fact-specific inquiry, ill-suited for a one-size-fits-all approach. *See* 7 *Moore's Federal Practice* § 33.107 (3d ed. 2024) ("[S]*ubject to the trial court's discretion*, the original answer *may* still be usable against the responding party as an evidentiary admission.") (emphasis added). I agree with the majority view that striking original discovery responses should be disfavored, because courts must proceed with caution to prevent parties from bending the truth. But this is a case where the original answer lacks evidentiary value.

The nature of the response is the single most important factor. The interrogatory answer at issue in this case is not based on firsthand personal knowledge of a party but was provided and verified by a ChexSystems Business Systems Analyst through a review of business records. This was appropriate, because when an interrogatory is directed to a corporation, "interrogatories must be answered" "by any officer or agent, who must furnish the information available to the party." Fed. R. Civ. P. 33(b)(1)(B). Thus, "the agent who answers on behalf of the corporation does not need to have personal knowledge." *United States v. 42 Jars, More or Less, Bee Royale Capsules*, 264 F.2d 666, 670 (3d Cir. 1959); *see also Katiroll Co. v. Kati Roll & Platters Inc.*, No. 10-3620, 2014 WL 12634921, at *6 (D.N.J. Apr. 8, 2014) (noting that "[c]ase law . . . makes clear that the officer or agent responding on behalf of the corporation 'does not need to have personal knowledge.'") (internal citations omitted).

The Original Response was appropriately crafted based upon the records ChexSystems had identified to that point. But as discovery led to more records being identified, ChexSystems realized that *all* its records established that Mr. Kulb was never listed as "deceased" in a consumer

report provided to a third party.[6]  The Original Response was therefore incorrect, and ChexSystems complied with its Rule 26(e) duty to correct it.

In most situations it would be appropriate to maintain the original interrogatory responses on the record for use in cross-examination and impeachment, such as when a response is based on personal knowledge or when there is other evidence in the record supporting the original response. But where a response is entirely based on records and it becomes clear that no evidence supports the original response, no purpose is served by keeping such a response as part of the record.  No real dispute of fact exists because there is an objective basis on which to judge whether the answer was correct or not.  Here, the nature of the response and other undisputed evidence in the record warrant striking the Original Response as erroneous.

Other relevant factors also weigh towards striking the Original Response.  There is no indication that ChexSystems acted in bad faith or engaged in any gamesmanship.  ChexSystems's correction was consistent with all the record evidence, and Mr. Kulb thus should not have been surprised or prejudiced by the Supplemental Response.  Further, ChexSystems provided Mr. Kulb with the corrections two months before the dispositive motion deadline.  Though discovery was closed by then, Mr. Kulb had time to move to strike the Supplemental Response or move to reopen discovery prior to the dispositive motions deadline.  He did neither.[7]

---

[6] Not a single piece of evidence on the record supports the Original Response's contention that Mr. Kulb was reported as "deceased" to Goldman Sachs. *See, e.g.*, ECF 21-7 (showing four reports sent to Goldman Sachs featuring three scores in the 500s and one score listed as 9999 because of "insufficient data found"); Cables Decl. ¶ 14 ("ChexSystems never reported to a third party that Plaintiff's SSN was inactive or reported any other deceased notation."); *c.f.* Kulb Dep. 87:24-88:12 (Mr. Kulb does not know whether he was listed as deceased in a report from ChexSystems to Goldman Sachs).

[7] Mr. Kulb moved to extend discovery *after* ChexSystems had filed its Motion for Summary Judgment and did not premise his motion on ChexSystems's Rule 26(e) correction.  *See* ECF 22.

In light of the collective weight of these factors, I find that it is proper to strike the Original Response. I will only consider the Supplemental Response and other record evidence in reconsidering ChexSystems's Motion for Summary Judgment.

> 3. *On the correct record, summary judgment on the Section 1681e(b) claim is warranted.*

Without the Original Response, there is no evidence in the record indicating that ChexSystems ever reported Mr. Kulb as deceased in a consumer report. Mr. Kulb does not know the contents of the consumer reports sent to Goldman Sachs, only that he was denied an Apple Card. Kulb Dep. 87:24-88:12. And the spreadsheet detailing inquiries and scores,[8] Ms. Cables's declaration, and the Supplemental Response all clearly demonstrate that Mr. Kulb was never listed as deceased. On this record, no reasonable jury could conclude that false information was included in a credit report. Because publication is a required element for Section 1681e(b) claims, ChexSystems is entitled to summary judgment on this count.[9]

---

[8] Mr. Kulb asserts that ChexSystems's reporting of a "9999" credit score to Goldman Sachs – as evidenced in the inquiry spreadsheet – is "synonymous" with listing Plaintiff as deceased, thereby creating a dispute of material fact. I disagree. A 9998 score means deceased, whereas a 9999 score means there is insufficient information available to generate a score. *See* ECF 21-7.

[9] I will not address in detail ChexSystems's other arguments because Mr. Kulb's failure to show that inaccurate information was published is fatal to his Section 1681e(b) claim. I note, however, that ChexSystems misreads my prior memorandum. I did not rule that it is per se unreasonable for consumer reporting agencies to rely on the Social Security Administration's DMF. Rather, I held that ChexSystems's process for eliciting a consumer's social security number may be unreasonable. *See Kulb*, 2025 WL 1071423, at *3 ("data entry errors are entirely foreseeable, and the record does not clarify whether ChexSystems had reasonable procedures in place to avoid inputting incorrect data"). Likewise, if data received from third parties – including the Social Security Administration – creates internal inconsistencies within a single file or report that are not investigated, a credit reporting agency's procedures may be unreasonable. *See Cortez*, 617 F.3d at 710-11. Since my prior opinion, another judge in this district has denied summary judgment in a similar case when a CRA reported a consumer as "deceased" based on a mistyped social security number. *Breitenbach v. SageStream, LLC*, No. 24-0893, 2025 WL 1655317, at *6 (E.D. Pa. June 11, 2025) (Wolson, J.).

### B. Section 1681i

ChexSystems also requests that the Court reconsider its denial of summary judgment on Mr. Kulb's Section 1681i FCRA claim. Defendant may be offended by Plaintiff's evidentiary sleight of hand, but a court must evaluate each issue separately on its own merits.[10] Unlike with Section 1681e(b) claims, publication of false information is not a required element for Section 1681i of the FCRA. And because there is evidence capable of being introduced at trial on which a jury could reasonably find for Mr. Kulb on all Section 1681i elements, I reject ChexSystems's Motion for Reconsideration on this claim.

First, ChexSystems contends that Plaintiff relied on the same misleading Original Response to support his Section 1681i claim. I disagree. Section 1681i establishes a duty to reinvestigate disputed information in "a consumer's file," 15 U.S.C. § 1681i(a)(1)(A), and creates a private right of action to enforce this requirement, *id.* at §§ 1681n, 1681o. In the context of the statute as a whole, Section 1681i is *inward* facing, focused on the consumer file internally maintained by consumer reporting agencies (CRAs) rather than what is ultimately published in credit reports. *See Cortez*, 617 F.3d at 711 ("Congress clearly intended the protections of the FCRA to apply to all information furnished *or that might be furnished* in a consumer report," not just to information that is actually published) (emphasis added). Thus, the "plain language of the FCRA contains no requirement that the disputed information be published to a third party in order for a consumer to recover actual damages under § 1681i(a)." *Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1335 (11th Cir. 2015). Mr. Kulb's failure to demonstrate that inaccurate

---

[10] The Court is also offended, as was made clear during oral argument. But counsel's conduct does not rise to a level that is sanctionable.

information was published in a consumer credit report – though fatal to his Section 1681e(b) claim – does not extinguish his Section 1681i claim.

ChexSystems further asserts that Mr. Kulb's Section 1681i claim fails because he brings forth no evidence indicating that inaccurate information existed within his consumer *file*. But in doing so, ChexSystems advances a new argument that it did not pursue in its initial motion, which is not proper on a motion for reconsideration.[11] But even if this were procedurally proper, potentially available evidence precludes summary judgment.

To advance a Section 1681i claim, a plaintiff must demonstrate that information included in their consumer file is either inaccurate or materially misleading. *Bibbs*, 43 F.4th at 344-45. The FCRA defines consumer file as "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." 15 U.S.C. § 1681a(g). This information thus does not have to be stored in a single file or folder – it can exist spread throughout a CRA's records. The Third Circuit has commented that a consumer file includes "all information on the consumer that is recorded and retained by a consumer reporting agency *that might be furnished*, or has been furnished, in a consumer report on that consumer." *Cortez*, 617 F.3d at 711-12 (emphasis added) (citing *Gillespie v. Trans Union Corp.*, 482 F.3d 907, 909 (7th Cir. 2007)). Of note, this Circuit has declined to rule that "file" is *limited* to the information included in a consumer report, noting that Congress assigned different definitions to these terms, rendering it "unlikely that Congress intended the two terms to mean exactly the same thing." *Id.*

---

[11] An argument must be made with an exacting degree of particularity to be preserved. *See, e.g.*, *United States v. Bradley*, 959 F.3d 551, 556 (3d Cir. 2020). In moving for summary judgment, ChexSystems merely argued that there was never a deceased notation in a credit *report*, rather than a consumer file.

at 711 n.27.  Thus, Mr. Kulb must persuade a jury that (1) ChexSystems recorded and retained inaccurate information on him – in this case, that he was deceased; and (2) this information has or *might* be furnished in a consumer report, and (3) that ChexSystems's reinvestigation procedure was unreasonable.

Here, ChexSystems seeks to capitalize upon Plaintiff's failure to go beyond paper discovery.  It overlooks the fact that at summary judgment, the nonmoving party need not "produce evidence in a form that would be admissible at trial in order to avoid summary judgment."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  The question is whether there is evidence "capable of being admissible at trial."  *Fraternal Ord. of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016).

Here, there is evidence that could lead a jury to conclude that ChexSystems violated Section 1681i.  The evidence includes:

- Mr. Kulb's January Consumer Disclosure, ECF 27-3, featuring a "deceased" notation alongside Mr. Kulb's name, address, and prior credit inquiries.[12]

- Mr. Kulb's testimony about his March 8, 2021 call with a ChexSystems employee discussing ChexSystems's reinvestigation process.[13]

---

[12] These prior credit inquiries are linked to Mr. Kulb's correct social security number.  *See* ECF 21-7.

[13] The statements of the ChexSystems employee are not hearsay under Federal Rule of Evidence 801(d)(2).

- Ms. Sarah Cables, a ChexSystems employee who in her declaration, ECF 21-6, discussed ChexSystems's investigation of Mr. Kulb's March 2021 file dispute, and what ChexSystems required of him "to alter the information."[14]  *Id.* ¶ 19.

- The ChexSystems spreadsheet with data from its system records showing all requests for both credit reports and file disclosures for Mr. Kulb, with entries that contain a "deceased" notation linked to Mr. Kulb's correct name and address and further linked to a Customer ID subsequently associated with his correct social security number.  *See* ECF 21-7.

From this admissible evidence, a reasonable jury could conclude that ChexSystems listed Mr. Kulb as deceased in his consumer file,[15] and that this deceased notation "might" be published in a consumer report.[16]  A jury could also conclude that ChexSystems's reinvestigation was unreasonable for failing to look at internal records that clearly demonstrate Mr. Kulb had inputted an incorrect social security number.

---

[14] This also provides support for the proposition that Plaintiff's deceased notation was in his consumer file and capable of being altered by ChexSystems once it was provided with proof from the Social Security Administration.

[15] ChexSystems argues that this claim should be dismissed because Mr. Kulb lacks evidence that the deceased notation is linked to his correct social security number.  But the FCRA contains no such requirement.  Rather, the incorrect information must be linked to him, not necessarily his social security number.  Because (1) the January Consumer Disclosure had the incorrect deceased notation linked to Mr. Kulb's correct name, address, and past inquiries, and (2) the spreadsheet shows that a Customer ID was linked with both the inaccurate 'deceased' social security number and the correct social security number, a reasonable jury could conclude that the deceased notation was linked to him even if it was not directly linked to his correct social security number.

[16] ChexSystems asserts that Mr. Kulb fails to show that the deceased notation might be included in a consumer report.  But the ultimate question is whether it is *capable* of being produced, not whether it *has* or definitively *will* be under current ChexSystems procedures.  ChexSystems summarily claims that the notation would not be included in a report, but that is an issue for a jury.

ChexSystems is undoubtably frustrated that Plaintiff's failure to take any depositions is not fatal to his ability to withstand a motion for summary judgment. But when there is evidence capable of being produced at trial, a claim can proceed. ChexSystems's Motion for Reconsideration is denied as to Section 1681i, and this Court's previous denial of summary judgment as to this claim stands.

**IV.   Conclusion**

For the reasons set forth above, Defendant's Motion for Reconsideration will be granted in part and denied in part. An appropriate order follows.

/s/ Gerald Austin McHugh<br>
United States District Judge